122 So.2d 699 (1960)
Rene PARKER
v.
Ernest YOUNG.
No. 5087.
Court of Appeal of Louisiana, First Circuit.
June 29, 1960.
*700 Dalton J. Barranger, Covington, for appellant.
F. B. Cappel, Lacombe, for appellee.
Before ELLIS, LOTTINGER and LANDRY, JJ.
ELLIS, Judge.
This suit was instituted by Rene Parker against Ernest Young for the complete loss of a 1958 Ford car resulting from a collision with defendant's cow. The accident in question occurred on September 20, 1958, on U. S. Highway 190 near the town of Lacombe, Louisiana and the replacement value of the car was set at $300.
Judgment was rendered in the trial court in this amount for the plaintiff. The defendant has perfected a suspensive appeal from this judgment.
There are two main issues before this court on appeal. The first issue is whether or not the fact that defendant's cow was on Highway 190 at the time of the collision in question was the result of negligence on the part of the defendant. The second issue is whether or not the plaintiff's actions constituted such contributory negligence as would bar his claim for damage. Conversely, if the defendant should be found free of negligence and the plaintiff should be found negligent, then defendant's reconventional demand for the value of the cow should be allowed.
Plaintiff was driving along Highway 190 at about 10:30 p.m. on the night of September 20, 1958, when suddenly a cow darted from the left side of the highway into the path of his car causing an accident which killed the cow and damaged the car to such an extent that it was a total loss. Plaintiff was accompanied, at the time, by his wife and sister-in-law and both of them corroborated his testimony in all respects. Plaintiff's car was moving at approximately 40 miles per hour just prior to the occurrence of the collision and the cow was not noticed by either the plaintiff nor the other two occupants of plaintiff's car until it darted suddenly from the left into the path of the car.
*701 Counsel for defendant raised questions of whether or not plaintiff's lights were adequate and whether or not plaintiff saw what he should have seen and did what he should have done to avoid the collision. Suffice it to say that plaintiff did what he should have done to avoid the collision. Suffice it to say that plaintiff had a right to expect Highway 190 to be free of cattle on the night in question. LSA-R.S. 3:2801 prohibits the owners of cattle from knowingly, willfully, or negligently permitting such cattle to roam at large upon that particular highway as well as other highways designated in that statute. If plaintiff had been apprised of the fact that cattle were allowed to roam at large upon the highway in question then a higher duty of care would be placed upon him. Taking into consideration the applicable statutes and the facts surrounding the accident, it is felt that plaintiff was surprised by the sudden appearance of a dark cow on a dark night on a highway upon which no cow should appear under the law. It is felt that the trial court was not in error in finding the plaintiff free of such negligence as would constitute a proximate cause of the accident in question.
Having reached this conclusion, it must be decided if there was negligence on the part of the defendant, Ernest Young, and if so was it the type of negligence which is prohibited by the pertinent statutes. The final question is whether or not defendant's negligence, if proven, was the proximate cause of the accident in question.
The applicable portions of LSA-R.S. 3:2801 et seq. read as follows, to-wit:
LSA-R.S. 3:2801:
"There is hereby found and declared a necessity for a stock law embracing certain public highways of the state of Louisiana and necessity that its application be uniform throughout the state."
LSA-R.S. 3:2803:
"No person owning livestock shall knowingly, willfully or negligently permit his livestock to go at large upon the following public highways of this state:
 "Route Section
* * * * * *
 U.S. 190....Jct. US 90 near Miss.
 State Line to Jct. US
 171 at Ragley"
No applicable Louisiana cases have been cited by either counsel under the quoted statutes, nor has this court been able to discover such cases in Louisiana Jurisprudence. To this extent, the issues before this court are apparently res nova. However, under the similar statutes prohibiting certain livestock from roaming at large upon paved, black topped or asphalt treated highways of Louisiana, Jurisprudential rules and interpretations have been evolved which seem both logical and applicable to the case at bar.
In the case of Ansardi v. Potter, La. App., 71 So.2d 347, 349, we find the following language:
"Plaintiff contends that defendant's negligence was the proximate cause of the accident, which he enumerates as follows:
* * * * * *
"(b) In violation of LSA-R.S. 3:2571 and LSA-R.S. 3:2851, which respectively provide:
"It shall not be lawful for horses, mules, cattle, hogs, sheep, or livestock of any description to go on the levees, or the space between the base of the levees and the drainage ditch, from and during the time that the water is against the levee * * *'
"`It shall not be lawful for horses, mules, donkeys, or asses to go on the paved, black-topped and asphalt treated highways of the state system and the rights of ways therefor * * *'
* * * * * *
"Defendant, in opposition thereto, insists that he was not guilty of any negligence in the premises; that he *702 exercised every reasonable precaution required by law or common prudence to preclude the possibility that the cow would escape through the substantial fence maintained by him for the purpose of confining his stock."
"The only question posed for our consideration insofar as the main demand is concerned, is one of fact and that is whether the defendant was guilty of any negligence in erecting or maintaining the fence enclosing his property and, if so, was this negligence the proximate cause of the accident?"
"In Raziano v. T. J. James & Company, La.App.1952, 57 So.2d 251, 254, we had occasion to review and discuss almost the identical question posed for our consideration by this case. In that case we said:
"Under the rules which emerged from the common law the owner of domestic animals possessed a duty which was absolute to keep them contained within his own premises and he was strictly liable for their trespass on another's land if he failed to do so. "Where my beasts of their own wrong without my will and knowledge break another's close I shall be punished, for I am the trespasser with my beasts." 12 Hen. VII, Keilway 3b Accord; McKee v. Trisler, 1924, 311 Ill. 536, 143 N. E. 69, 33 A.L.R. 1298; Drew v. Gross, 1925, 112 Ohio St. 485, 147 N.E. 757; Fox v. Koehnig, 1926, 190 Wis. 528, 209 N.W. 708, 49 A.L.R. 903. Therefore, the obligation rested on the owner of domestic animals to fence his stock in and no burden was imposed upon his neighbor to keep them out.'
"`The State of Louisiana has enacted no general statute forbidding the owners from indulging in the custom of allowing their stock to roam at large, but vests this power in the Police Juries of the respective parishes who may enact ordinances to accomplish the desired result. In this connection Article 2321 of the Louisiana Civil Code of 1870 is significant. It provides: The owner of an animal is answerable for the damage he has caused. * * *.'
"`It would, therefore, appear per se that Article 2321 would impose an absolute liability upon the owner of an animal, irrespective of the existence of any ordinance; however, that article has been interpreted as subject to the negligence or fault requirements of Articles 2315 and 2316 of the Civil Code. Tillman v. Cook, La.App.1941, 3 So.2d 230. This interpretation is enunciated in Tripani v. Meraux, 1936, 184 La. 66, 165 So. 453, 455, wherein [sic] the opinion it is stated `although article 2321 of the Civil Code declares, unqualifiedly, that the owner of an animal is answerable for the damage he has done, the interpretation which has been put upon this article, consistently, by this court, is that the owner of an animal is liable for damages done by the animal only in cases where the owner was guilty of some fault or negligence in his ownership or possession of the animal. A fortiori, the burden of proof is on the owner to show that he was without the slightest fault and did all that was possible to prevent the injury, Bentz v. Page, 115 La. 560, 39 So. 599; Damonte v. Patton, 1907, 118 La. 530, 43 So. 153, 8 L.R.A., N.S., 209, 118 Am. St.Rep. 384, 10 Ann.Cas. 862; Boudreau v. Louviere, La.App.1938, 178 So. 173. However, the presumption of fault is a rebuttable one. Mercer v. Marston, 1923, 3 La.App. 97; Matthews v. Gremillion, La.App.1937, 174 So. 703.
"`Several generations ago the courts of this Nation rejected the common law rule of strict liability growing out of animal trespasses; but as various states of this Union have become more populated and industrialized, the tendency has been to restore the rule of strict liability, either by state statute or local ordinance, for the reason that the need of such law in the community outweighs the economic burden imposed upon the owners of animals.'

*703 * * * * * *
"In the final analysis, it, therefore, appears that the existence of an ordinance places an obligation upon the owner to contain his stick within a properly constructed enclosure."
It is evident from the above-quoted language of the Ansardi case that our courts have heretofore found that statutes almost identical in nature, purpose and scope to LSA-R.S. 3:2801 et seq., have been found to place a duty upon the owners of livestock to keep such livestock in a completely adequate enclosure in areas affected by such statutes.
Counsel for defendant strongly urges that the trial court was in error in not requiring the plaintiff to prove in which respects defendant was negligent.
The district judge allowed plaintiff to prove the facts surrounding the accident itself and then plaintiff closed his case. Defendant's motion for a directed verdict at this stage in the trial was overruled. Defendant's attorney then introduced evidence in an effort to show that defendant's negligence was not the cause of the cow's presence on Highway 190 at the time of the wreck.
On appeal, counsel for defendant contends that this puts a terrific burden upon cattle owners similar to the burden of proof found in cases applying the doctrine of res ipsa loquitur.
The only burden which defendant has is to prove that the presence of the cow on the highway did not result from defendant's negligence. This burden is placed upon defendant by the pertinent statutory law, as discussed above. Having submitted such proof, defendant also has the right to submit proof of negligence on the part of the plaintiff.
It would completely vitiate a stock law if the burden of proof of defendant's negligence were placed upon the passing motorist who strikes a cow on an open highway. The proof of where, when, and how the cow escaped from the enclosure is logically and fairly placed upon the individual who has a duty to keep that cow within a proper enclosure.
Nor does the enactment of LSA-R.S. 3:2808-2809 (Act 187 of 1954) wherein the state undertook to provide funds for the fencing of certain public highways in this state, in any way diminish, decrease or reduce the burden incumbent upon owners of livestock to keep their animals properly contained and prevent their roaming at large upon the public roads of this state. The aforesaid statute merely provides financial assistance to defray a portion of the cost of fencing properties adjacent to those highways from which livestock has been banned by express law. The construction of such fences with state aid cannot be interpreted as relieving owners of the consequences of knowingly, willfully or negligently permitting the entry of their animals upon those highways where the presence of livestock is now prohibited. Neither can the failure, neglect or refusal of the state to repair or maintain such fences be availed of by owners of livestock as a defense in the event livestock, deliberately permitted by their owner to roam at large, enter upon such a forbidden public thoroughfare through a break or gap in such fences resulting from accident, deterioration or otherwise.
At this point the rules set forth above should be applied to the facts presented in the case at bar.
Counsel for defendant urges that defendant did not mean exactly what he said and that defendant had difficulty in expressing himself. It is granted that this is true, to a certain extent. However, the trial court found the gist of testimony[1] relative to defendant's negligence was as follows. Defendant *704 did know of a spot on the side of a cattle gap in his fence where a cow might escape prior to the occurrence of the wreck. Defendant attempted to place a bar at this spot in such a fashion as would prevent a cow from escaping by the gap. Defendant knew of the weak spot and that his effort to bar it might not be effective.
There is no manifest error in these findings. Suffice it to say that it is found in reversing a district court's decision, that defendant failed to sustain the burden of proof placed upon him. He is found negligent in allowing his cow to escape through a defective gap which he knew or should have known might give way from the enclosure where it was normally kept to Highway 190 where it was killed.
For the reasons assigned, the judgment of the trial court is affirmed in all respects.
Affirmed.
NOTES
[1] "Q. Did you see how she got onto the highway?

"A. I was afraid of that. I put a big piece of pole by the cattle gap and somebody must have taken it down, or it fell down, you know how you put it up on the cattle gap. I used my own money, but sometimes it falls down and she could get by it."